# IN THE COURT OF APPEALS OF IOWA

No. 25-1150
Filed December 3, 2025

IN THE INTEREST OF S.B.,
Minor Child,

R.B., Father,
     Appellant.
_____

Appeal from the Iowa District Court for Polk County, Brent Pattison, Judge.


A father appeals the termination of his parental rights to a child.
**AFFIRMED.**


Richard Hollis, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.


Considered without oral argument by Greer, P.J., Ahlers, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**DOYLE, Senior Judge.**

On appeal from the order terminating his parental rights to a child, a father challenges the grounds for termination and the finding that termination is in the child's best interests. He also seeks to avoid termination by alleging that it would be detrimental to the child and asks for more time to show the child can be returned to his custody. In the alternative, he requests that we place the child in a guardianship. Following a de novo review, *see In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022), we affirm.

**I. Background Facts and Proceedings.**

The child came to the attention of the Iowa Department of Health and Human Services (DHHS) in June 2024 after testing positive for methamphetamine at birth. Both parents also tested positive for amphetamines. In addition to substance use, there were concerns about the parents' mental health and history of domestic violence. The juvenile court removed the child from the parent's custody. DHHS placed the child with the paternal grandmother before moving the child to a foster care placement due to safety concerns.

The juvenile court adjudicated the child in need of assistance in August 2024. Earlier that month, the father was arrested for possessing drug paraphernalia and violating a no-contact order. He was in jail at the time of the child-in-need-of-assistance (CINA) hearing.

The father was released from jail in early November. He attended visitation with the child at first but missed three weeks of visits in December. At his next visit with the child, on January 6, 2025, the child "was distressed for most of the visit due to not being comfortable around [the father]." The father struggled to feed and

change the child before ending the visit early. The father last visited the child on February 14. He was arrested for criminal trespassing and violating a no-contact order on April 1, for which he was ordered to serve ninety days in jail.

Two weeks after the father's arrest, the State petitioned to terminate parental rights. On June 4, the juvenile court granted the State's petition and terminated the father's parental rights under Iowa Code section 232.116(1)(e) and (h) (2025). The father moved the court to reconsider, enlarge or amend its order to find the State failed to make reasonable efforts and to consider establishing a guardianship for the child rather than terminating his parental rights. While the juvenile court granted the motion by making additional findings, it did not change the outcome.

**II. Discussion.**

Termination of parental rights requires a three-step analysis. *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). The court must determine whether (1) evidence supports any ground for termination under section 232.116(1), (2) termination is in the child's best interests under the framework laid out in section 232.116(2), and (3) termination can be avoided under one of the permissive grounds set out in section 232.116(3). *See id*. at 472–73. Because the father challenges each step of the analysis, we begin our analysis with section 232.116(1).

**A. Grounds for Termination.**

The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(e) and (h). We may affirm if the record supports either one.

*See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). To terminate parental rights under section 232.116(1)(h), the evidence must show:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father only challenges the showing under section 232.116(1)(h)(4). The question is whether returning the child to the father's custody at the time of the termination hearing would expose the child to harm that would lead to a new CINA adjudication. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing"); *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) (en banc) (stating that a child cannot be returned to a parent's custody as provided in section 232.102 if doing so would expose the child to any harm amounting to a new CINA adjudication).

There is overwhelming evidence that the child could not be returned to the father's custody at the time of the termination hearing. The juvenile court adjudicated the child a CINA based on the parents' methamphetamine use, mental-health concerns, and domestic violence in their relationship. The father never participated in the services offered to address these concerns. Based on the father's arrest in April 2025, the same month as the termination hearing, these concerns have not abated. In addition, the father testified he has been "homeless" for about two years and had not secured housing pending his release from jail.

The father also challenges the reasonable efforts made to eliminate the need for the child's removal. Although the reasonable efforts requirement is not viewed as a strict substantive requirement for terminating parental rights, the State must show them as part of its ultimate proof that the child cannot be returned safely to a parent's custody. *See In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019). The father's claim that DHHS failed to make reasonable efforts is focused on his need for assistance with transportation to visitation and services. Although DHHS procured bus passes for the father, he argues it never clearly communicated that it was willing to work with him to ensure he could get transportation to the DHHS office to get the passes.

In response to the father's motion to enlarge or amend the termination order, the juvenile court noted that DHHS "offered more than the mere baseline of reasonable efforts" to the father by offering solutions like housing referrals, transportation, and assistance with participating in drug tests. The problem is that the father did not take advantage of those efforts by accepting help. We reach the same conclusion as the juvenile court: the record shows that the father's failures are the result of his bad choices, not a failure of services from DHHS.

**B. Best Interests.**

We next turn to the question of the child's best interests, which we analyze under the framework described in section 232.116(2). *See In re A.H.B.*, 791 N.W.2d 687, 690-91 (Iowa 2010). That section requires that we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The "defining

elements" are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

Clear and convincing evidence shows that termination is in the child's best interests. The father made no progress in resolving the circumstances that led to the CINA adjudication. He offered plenty of excuses for his failure to engage with the services offered to him—lack of transportation, the weather being "too cold," losing his phone—but these issues did not prevent him from other activities like going to movies, playing video games with friends, and violating no-contact orders. The father simply squandered the time that he was afforded. Section 232.116(1)(h) allows termination of parental rights six months after a child's removal. Once that time passes, we view termination proceedings "with a sense of urgency." *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). That is because children are not equipped with pause buttons. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that the court must not deprive children permanency on the hope that someday the parent will be able to provide a stable home); *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) (noting that if the plan to reconcile parent and child fails, "all extended time must be subtracted from an already shortened life for the children in a better home"). For more than nine months, the father failed to do even the minimum required of him. Meanwhile, the child has been the subject of juvenile court proceedings her entire life. The child's best interests are not served by delaying permanency longer.

**C. Permissive Exception.**

The father contends that terminating her parental rights will harm the child based on the closeness of the parent-child relationship. If clear and convincing

evidence shows that the termination would be detrimental to the child due to the closeness of the parent-child relationship, Iowa Code section 232.116(3)(c) allows the court to leave the parental rights intact.

The father bears the burden of showing termination would be detrimental to the child, *see A.S.*, 906 N.W.2d at 476, and he falls short. The child was removed at birth and has never been returned to the father's custody. During the CINA proceedings, the father was jailed twice, which prevented him from visiting the child. During the five months that he was not in jail, he was not consistent with attending visits. As a result, the child was uncomfortable around the father at a January 2025 visit and became "distressed." The father had not seen the child for more than four months at the time the court entered the termination order. There is no basis for avoiding termination under section 232.116(3)(c).

**D. Additional Time.**

The father asks for time under Iowa Code section 232.104(2)(b), which allows the juvenile court to delay termination for up to six months if it will eliminate the need for the child's removal. To delay termination, the court must state the "specific factors, conditions, or expected behavioral changes" that led it to make that determination. Iowa Code § 232.104(2)(b).

In the termination order, the juvenile court found no reasonable likelihood that the child could be reunited with the father within six months:

> He is going to remain in jail until the end of June, and after that he would have to show a period of stability in the community before [the child] could be reunited with him. His track record does not support that will happen—over the last ten months or so, he has been in and out jail, struggled to participate in services, and has been unable to achieve any form of stability. And he has not addressed his history of substance use—a critical need if he is going to parent this young

child. Under these circumstances, a six-month extension is not warranted.

We concur with the juvenile court's assessment.

**E. Guardianship.**

In the alternative, the father seeks to establish a guardianship as another permanency option. But an otherwise appropriate decision to terminate "is not to be countermanded by the ability and willingness of a family relative to take the child." *A.S.*, 906 N.W.2d at 475 (citation omitted). The question is whether guardianship serves the child's best interests. *See id.*

For the same reasons that we find termination is in the child's best interests, we reject the father's request. While guardianship may benefit the father, it does not provide the child with the same permanency that adoption provides. The guardian would have to report to the court at least annually until the child reaches the age of majority seventeen years from now. *See id.* at 477. And the father could petition to terminate the guardianship, leading to more uncertainty for the child. We agree with the juvenile court that on this record, a guardianship will not serve the child's best interests.

**F. Conclusion.**

We affirm the termination of the father's parental rights.

**AFFIRMED.**